THE STATE OF OHIO, APPELLEE, *v.* CRAMER, APPELLANT.

(Nos. 4741 and 4742—Decided February 3, 1953.)

*Mr. Richard W. Gordon,* city attorney, *Mr. Glenn E. Kemp* and *Mr. John L. VanDervoort,* for appellee.
*Messrs. Smith, Clark & Holzapfel,* for appellant.

HORNBECK, P. J. These are two appeals from convictions and sentences of the defendant on certain

charges by the Municipal Court of the City of Columbus.

Appeal No. 4741 arises by reason of a charge against the defendant of the violation of Section 12705, General Code, in that he ''not then and there being a legally registered pharmacist under the laws of the state of Ohio, and not having in his employ a pharmacist legally registered under the laws of the state of Ohio, in full and actual charge of such retail drug store. located at 1359 West Broad street, in said city, in violation of Section 12705, G. C.''

The second charge, involved in appeal No. 4742, is that the defendant, ''not being a legally registered pharmacist under the laws of the state of Ohio, did unlawfully sell, to wit: poison, Lysol, in violation of Section 12706, G. C.''

Referring to No. 4741, the evidence, as the trial court had a right to resolve it, discloses that the defendant jointly operated a drug store in the city of Columbus and that he was not a legally registered pharmacist and did not at the time in question have a legally registered pharmacist in his employ and in full and actual charge of such drug store.

In the most favorable light to the defendant it appears that his partner, who with him jointly owned the drug store, was a legally registered pharmacist but that at the time in question he was absent from the drug store, intending to return in a short time; and that when the pharmacist was not on duty the pharmaceutical department was closed and no prescriptions were filled. However, there is testimony in the record also to the effect that the defendant had told the agent of the State Medical Board that it was the practice of each partner to alternate with the other a day at a time in the service in the store. The trial judge had a right to accept this admission of defendant if found by him to be true.

The statute, as now framed, makes it an offense to manage or conduct a retail drug store without a registered pharmacist at all times in full charge of the store. In this particular the statute varies from the former section of the same number, which made it an offense not to have a registered pharmacist in full and actual charge of the pharmaceutical department of the store. The differentiation in the language in the section, as it now reads and as it formerly read, distinguishes the case cited by counsel for defendant. *State* v. *Knecht,* 28 N. P. (N. S.), 1.

Although the question is not raised by these appeals, or by the briefs of counsel, the court may not disregard an omission in the affidavit which renders it ineffective to charge an offense. The gist of Section 12705, General Code, is that an owner, manager or one who conducts a retail drug store must either himself be a registered pharmacist and be in charge of the store at all times, or at all times have a legally registered pharmacist in full and actual charge of the store. It is basic that a defendant charged with a violation of the section must either own, manage or conduct a retail drug store. The affidavit makes no such material charge as will be readily observed by an examination of the language thereof. *Kennedy* v. *State,* 34 Ohio St., 310; *Geiger* v. *State,* 5 C. C., 283, 3 C. D., 141; *Akerman* v. *City of Lima,* 7 N. P., 92, 8 O. D., 430; *State* v. *Williams,* 14 Ohio Law Abs., 637.

The affidavit charging no offense, the conviction and sentence are invalid and judgment will be entered in this court, finding for the defendant and dismissing the charge against him, and the cause will be remanded.

No. 4742 is a charge that the defendant in selling "Lysol," sold a poison which is in violation of Section 12706, General Code. There is no question that "Lysol" is a poison, and unless its sale is excepted

by Section 12707, General Code, it was an offense for the defendant to sell it.

That part of Section 12707, General Code, which is applicable here reads:

"Sections * * * 12706 of the General Code shall not apply to * * * the making or vending of proprietary medicines by a retail dealer, in original packages when labeled as required by the Federal Food, Drug and Cosmetic Act, * * *."

It is admitted that "Lysol," which defendant sold, was "in the original package and labeled as required by the Federal Food, Drug and Cosmetic Act." The state contends that it is not a proprietary medicine, and the defendant insists that it is. The state in its brief also directs attention to a list prepared in October 1941 by the State Board of Pharmacy which, "in effect, ruled that Lysol is not a proprietary medicine." It is asserted that the court should take judicial notice of this list. We doubt if it is such a rule of public authority as that the court would take judicial notice of it. However, it probably comes within the rule that a court will consider and give weight to the construction made by state boards of statutes relating to subject matter over which they have general jurisdiction. *State, ex rel. Gentsch,* v. *Hirstius,* 15 N. P. (N. S.), 505, affirmed, 25 C. C. (N. S.), 177, 35 C. D., 233.

The meaning of the section under consideration is plain. Whether "Lysol" is a proprietary medicine presents the difficulty.

The package in which the "Lysol" was enclosed at the time it was sold carries the printed information that it is a "brand disinfectant"; that it may be used for "an antiseptic douche * * * cuts, scratches, and lacerations * * * for ringworm of the foot * * * for burns, scalds, etc., * * * for bee stings and nonvenomous insect bites," as well as "for disinfecting sickrooms and for all general housecleaning." This in-

formation is presumed to be true. Manifestly, the product, "Lysol," has many uses, which properly bring it within the classification of a proprietary medicine.

In *State Board of Pharmacy* v. *Matthews,* 197 N. Y., 353, 90 N. E., 966, 26 L. R. A. (N. S.), 1013, it was held that tincture of iodine, tincture of arnica and spirits of camphor, though commonly used as domestic remedies, are, nevertheless, medicines, within the pharmacy law prohibiting, under penalties, the sale of medicines or poisons except in the presence and under the supervision of a licensed pharmacist.

The judge writing the opinion said that the court would take judicial notice of the fact that the articles under consideration were medicines. There is much similarity between tincture of arnica and "Lysol" in the respect that both are poisonous substances. We find no other authority in point and counsel cite none.

Without pursuing the question further, it is our judgment that the product, "Lysol," is a proprietary medicine and that, even though it is a poison, its sale by a retail dealer is excepted from the application of Section 12706, General Code.

In our judgment, the conviction of the defendant on the charge of selling a poison in violation of Section 12706, General Code, is not proven by the evidence, and the essentials to a conviction under this section do not appear because the defendant comes within the exception to Section 12707, General Code.

The judgment in this court in appeal No. 4742 is in favor of the defendant; the charge against him is dismissed, and the cause is remanded.

*Judgments accordingly.*

WISEMAN and MILLER, JJ., concur.